## BANKS v. JAMERSON.

### No. 6146.

Court of Appeal of Louisiana. Second Circuit.

Nov. 1, 1940.

Rehearing Denied Nov. 29, 1940.

Writ of Certiorari and Review Denied Jan. 6, 1941.

Eugene J. Coen, of Shreveport, for appellant.

Chandler Furman, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover $111 allegedly paid to the defendant in error, it being part of the proceeds of an endowment policy of insurance issued to Charity Casey wherein plaintiff was designated beneficiary. The insured died on June 15, 1938. The policy's value was then $213. At that date there were in force two other policies on the life of the deceased in which her common-law husband, Demmie Choyce, was named beneficiary. The value of these policies was $231. The deceased was carrying burial insurance of $120 in a society owned by defendant, who also conducts a funeral parlor in the City of Shreveport.

On the day following the insured's death the plaintiff and Demmie Choyce went to defendant's office to arrange for the funeral and to select a casket. The total cost of the funeral and casket, as agreed upon, was $288.25. This was $168.25 in excess of the burial policy. To secure payment of this excess defendant required Demmie Choyce to assign to him to the extent of $168.25 the two policies in which he was named beneficiary. This was on June 17th.

The deceased was interred on June 18th. On June 20th plaintiff assigned to defendant the policy wherein she was the beneficiary. The assignment, in part, reads as follows, to-wit: " * * * that in consideration of the sum of ~~$214.00 and~~ services rendered and to be rendered by J. P. Jamerson for the burial of Charity Casey Choyce, she hereby assigns, sets over, and transfers to the said J. P. Jamerson the sum of $214.00 of the proceeds of that certain Life insurance Policy E–8555778 issued by the National Life and Accident Insurance Company on the life of Charity Casey Choyce which may be or is due your deponent from said company as the beneficiary under said policy."

Plaintiff also constituted defendant her attorney in fact, with power to represent her in all matters pertaining to said policy and "to sign for her and in her name all papers, checks, vouchers and documents as may be necessary in securing the payment of the policy."

On June 27th the insurer issued its check for $213.00 to plaintiff and defendant in full payment of its liability under the policy. The payees promptly repaired to a bank, endorsed the check and cashed it. Defendant received the money and handed plaintiff $102 and retained the remainder.

Plaintiff alleges that she was without knowledge of the value of the policy in her favor; in fact, thought it had lapsed for nonpayment of premiums; that defendant approached her about collecting the policy and suggested that he be allowed to do so and that he would "cut her in" on the

proceeds; that he made other representations at the time which were false and untrue; that acting upon said representations and believing the policy had little or no value, she executed the assignment; that she was not then indebted to him in any amount whatever and he was without right or authority to retain any part of said check.

Defendant alleges and contends that after plaintiff and Demmie Choyce arranged with him for the funeral of Charity Casey, plaintiff returned to his place of business and expressed dissatisfaction about the sort of funeral previously agreed upon and the price of the casket then selected; that at that time she selected another casket, the price of which was $111 in excess of the first one selected, which amount she agreed to pay.

The lower court rejected plaintiff's demand and dismissed her suit. She has appealed from this judgment.

The policy involved herein and the two in part assigned to defendant by Demmie Choyce were delivered by him to defendant on June 16th or 17th. They were found among the papers and effects of the deceased.

At the time the funeral arrangements were discussed and agreed upon, defendant made out an itemized bill of the expenses therefor and required Demmie Choyce to sign it in token of his acceptance and as a commitment of partial liability therefor. Plaintiff was not required, nor was she requested, to sign this bill or any other. In this connection defendant testified:

"Q. Jamerson, why didn't you require Cornelia Banks to sign the original bill, when she was at your office? A. Because Cornelia had nothing to offer me. I cannot bury people unless I see something to pay for it, and Dennis had insurance. Later on she came to me and stated that she had insurance and wanted to make a change.

"Q. When you make arrangements you must see something in sight? A. Yes, sir.

"Q. Do you always give a written bill to each customer for the services to be rendered? A. I give a bill and receipt too.

"Q. To each customer? A. Yes, sir."

Defendant does not contend that when plaintiff authorized the purchase of the more expensive casket, he gave her a bill therefor or required her to sign any papers. He did not introduce in evidence an invoice showing the sale price of the casket which he says he purchased from a company in the City of Shreveport.

In view of defendant's business rule, reflected from the quoted testimony, and it being certain that the assigned policy was in his possession before or very soon after the alleged second selection of a casket, and prior to burial of the deceased, it is pertinent to inquire why the rule was not followed in his dealings with plaintiff. Why would he have relaxed the rule in plaintiff's case, and enforced it against Demmie Choyce? The correct answers to these questions appear obvious. At the time, he had no right to ask for the assignment because plaintiff owed him nothing.

Plaintiff testified emphatically that she did not authorize defendant to purchase a more expensive casket and she and Demmie Choyce are positive that the deceased was buried in the casket which they jointly selected. Defendant and another colored man testified that the more expensive casket was used. This other man also testified that he accompanied defendant and plaintiff to the casket company when the second one was selected by them.

The assignment of the policy was prepared by defendant's counsel, who testified as a witness. It was signed in his office and notarized by him. Naturally it was drawn by the attorney consonant with defendant's suggestions. At that time the value of the policy was unknown to the parties. Premiums thereon had not been paid for some time, but under the extended insurance clause therein its life had been automatically extended. All parties concerned thought a lawsuit probable before any amount could be realized thereon. The following testimony given by plaintiff, we think, correctly reflects the true facts, to-wit:

"Q. Why did you pay Jamerson that money? A. He said that he would cut me in on the policy. I did not know the money was mine. He carried me to your office to cut me in on the policy.

"Q. You knew about the policy? A. No, sir, had not seen it.

"Q. I think that you testified this morning that you had seen it sometime before? A. That was when she joined and I think that was in 1927.

"Q. You knew that you were the beneficiary? A. Yes, sir, but I thought she had done dropped the policy.

"Q. You thought that it had lapsed? A. Yes, sir."

She was also asked: "What happened at the bank?" to which she replied: "Had the check cashed and Jamerson says this belongs to you—one hundred and two dollars—I have to pay the lawyer ten dollars for cutting you in and the rest is mine."

A significant fact in this case is that the consideration for which plaintiff made the assignment to defendant is "services rendered and to be rendered" by defendant in the burial of the deceased. It so happens that the deceased had been buried two days when this transaction took place.

The parties to this suit are members of the colored race. This is true of their material witnesses, save defendant's attorney. So far as the record discloses, all are of equal credibility. Plaintiff carried the burden of proving her contentions. We think she has done this. We are convinced that she did not authorize the purchase of the casket claimed by defendant. While such could happen, we are not impressed with the contention that the deceased, an humble washerwoman, was given a funeral costing $399.25. We do not believe defendant would have purchased the more expensive casket solely on the word of plaintiff, and especially does this appear unreasonable when it was within his power to have protected himself by having the policy assigned to him before the casket was used. There appears no good reason why plaintiff would have involved herself as defendant says she did.

It is our opinion that the assignment was made for the purpose and reasons alleged and testified to by plaintiff. All defendant did to effect collection of the proceeds was to surrender the policy and the assignment to the insurer. For this, he is certainly not entitled to $111. Plaintiff assented to him retaining this amount in error and under misapprehension of the true facts. There was no consideration whatever for the assignment. She is entitled to restitution of the amount sued for. Civil Code, Arts. 1893, 2301 and 2302. Code of Practice, Art. 18.

For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside; and there is now judgment for plaintiff, Cornelia Banks, and against the defendant, J. Paul Jamerson, for $111, with five per cent per annum interest thereon from judicial demand until paid, and for all costs.